Jonathan A. Michaels, Esq. (SBN 180455)
(jmichaels@mlgaplc.com)
Kyle Gurwell, Esq. (SBN 289298)
(kgurwell@ mlgaplc.com)
Ryan Jones, Esq. (SBN 301138)
(rjones@ mlgaplc.com)
**MLG, APLC**
151 Kalmus Dr., Suite A-102
Costa Mesa, CA 92626
Telephone: (949) 581-6900
Facsimile: (949) 581-6908

Robert N. Kaplan, Esq. (SBN 1430800)
(rkaplan@kaplanfox.com)
**Kaplan Fox & Kilsheimer LLP**
850 3rd Ave., 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

Laurence D. King (SBN 206423)
(lking@kaplanfox.com)
**Kaplan Fox & Kilsheimer LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707

Attorneys for Plaintiffs,
Ryan Baldwin, Erin Reilly, Bilal Mohammad Ali,
Jason Klein, Joshua Kim, Eric Ruiz and Rex Weston

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN BALDWIN; ERIN REILLY; BILAL MOHAMMAD ALI; JASON KLEIN; JOSHUA KIM; ERIC RUIZ; REX WESTON, individually, and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> vs. <br><br> KIA MOTORS AMERICA, INC., a California corporation; HYUNDAI MOTOR AMERICA, a California corporation; FCA US LLC, a Delaware limited liability company; MITSUBISHI MOTORS AMERICA, | Case No. <br><br> **CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |

INC., a Delaware corporation;
AMERICAN HONDA MOTOR CO.,
INC., a California corporation;
ACURA, a Division of American
Honda Motor Co., Inc.; TOYOTA
MOTOR SALES, U.S.A., INC., a
California corporation; ZF TRW
AUTOMOTIVE HOLDINGS CORP.,
a Delaware corporation,

            Defendants.

**– JURY TRIAL DEMANDED –**

# Table of Contents

I.   INTRODUCTION ................................................................................................5

II.  PARTIES ...........................................................................................................6

   A.   Defendants .................................................................................................6

   B.   Plaintiffs ...................................................................................................8

III. JURISDICTION AND VENUE .......................................................................9

IV.  FACTUAL ALLEGATIONS .........................................................................10

   A.   The Defective Airbag Control Unit .........................................................10

   B.   The Effected Cars ....................................................................................11

   C.   Defendants Conceal the Defect ...............................................................13

     i.   Defendants' Knowledge and Partial Recalls .......................................13

     ii.   The NHTSA Investigations ................................................................14

     iii.   Consumer Complaints ......................................................................14

   D.   Misrepresentations to the Public About Safety .......................................18

   E.   Diminished Value of the Cars ..................................................................22

V.   CLASS ACTION ALLEGATIONS ...............................................................22

   A.   Class Definitions ......................................................................................22

   B.   Class Certification Requirements .............................................................23

VI.  EQUITABLE TOLLING ...............................................................................24

   A.   Discovery Rule ........................................................................................24

   B.   Fraudulent Concealment ..........................................................................24

   C.   Estoppel ...................................................................................................25

VII. CLAIMS FOR RELIEF .................................................................................25

   A.   Federal Claims .........................................................................................25

     i.   Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* .........25

   B.   California Statutory Claims ......................................................................28

     i.   Violation of the Song-Beverly Consumer Warranty Act and Breach of the Implied Warranty of Merchantability ........................................................................28

     ii.   Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ...................................................................................................30

     iii.   Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* 33

C.    California Common Law Counts ............................................................... 39

   i.    Fraudulent Concealment ..................................................... 39

  ii.    Unjust Enrichment................................................................ 42

VIII.    PRAYER FOR RELIEF................................................................... 43

IX.    DEMAND FOR JURY TRIAL ...................................................... 45

## I.    INTRODUCTION

1.    This case involves an egregious breach of public trust by seven automotive manufacturers and a tier-one parts supplier, who have concealed a deadly airbag defect in 12.3 million U.S. cars. On the heels of the Takata recall, and the $1.5 billion in class action settlements that accompanied it, the manufacturers – Acura, Honda, Toyota, FCA, Mitsubishi, Kia and Hyundai – have known of this new airbag defect for years, and have yet refused to issue a recall to fix it.

2.    At issue is the vehicles' airbag control unit ("ACU") manufactured by supplier ZF-TRW that becomes over-stressed by excess electrical energy generated during a crash. The "electrical over-stress" forces the ACU to seize-up at the moment of impact, causing the airbags to not deploy and the seatbelt locks to fail.

3.    After numerous reports of deaths and serious injuries, in 2018 the National Highway Safety Traffic Administration ("NHTSA") launched an investigation into the matter, only to find out that ZF-TRW had been having in-depth discussions with manufacturers about the defective ACU since at least 2011. Under the Federal Motor Vehicle Safety Standards, manufacturers are required to issue a full vehicle recall within *five days* of learning of a defect.

4.    In April 2019, NHTSA elevated the investigation to an Engineering Analysis and expanded the scope of the investigation to include other manufacturers who had installed the ZF-TRW made ACU in their production vehicles. At its early investigation stages, NHTSA has confirmed that the defective ACU has been linked to at least four deaths; however, NHTSA complaint logs confirm that many more fatalities have been reported to NHTSA that are still under investigation.

5.    The Class Action complaint brings claims against each of the seven automotive manufacturers and the tier-one parts supplier for violations of the Magnuson Moss Act, violations of California consumer protection statutes and violations of common law claims of fraud and unjust enrichment.

## II.   PARTIES

### A. Defendants

6.     Defendant Kia Motors America, Inc. ("Kia") is a California corporation, with its corporate headquarters located in this district at 111 Peters Canyon Road, Irvine, California 92606. Kia is a manufacturer and distributor of new motor vehicles under the Kia brand. Kia markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Kia-brand vehicles through a network of dealers throughout the United States from its headquarters in California. Kia also creates and distributes the warranties and other written materials that accompany the sale and lease of Kia-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

7.     Defendant Hyundai Motor America ("Hyundai") is a California corporation, with its corporate headquarters located in this district at 10550 Talbert Avenue, Fountain Valley, California 92708. Hyundai is a manufacturer and distributor of new motor vehicles under the Hyundai brand. Hyundai markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Hyundai-brand vehicles through a network of dealers throughout the United States from its headquarters in California. Hyundai also creates and distributes the warranties and other written materials that accompany the sale and lease of Hyundai-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

8.     Defendant FCA US LLC ("FCA") is a Delaware limited liability company, with its corporate headquarters located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326. FCA is a manufacturer and distributor of new motor vehicles under the Chrysler, Dodge, Jeep, Ram, and Fiat brands. FCA markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Chrysler, Dodge, Jeep, Ram, and Fiat-brand vehicles through a network of dealers throughout the United States from its

headquarters in Michigan. FCA also creates and distributes the warranties and other written materials that accompany the sale and lease of Chrysler, Dodge, Jeep, Ram, and Fiat-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

9.    Defendant Mitsubishi Motors North America, Inc., ("Mitsubishi") is a Delaware corporation, with its corporate headquarters located in this district at 6400 Katella Ave., Cypress, CA 90630. Mitsubishi is a manufacturer and distributor of new motor vehicles under the Mitsubishi brand. Mitsubishi markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Mitsubishi-brand vehicles through a network of dealers throughout the United States from its headquarters in California. Mitsubishi also creates and distributes the warranties and other written materials that accompany the sale and lease of Mitsubishi-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

10.    Defendant American Honda Motor Co., Inc., ("Honda") is a California corporation, with its corporate headquarters located in this district at 1919 Torrance Boulevard, Torrance, California 90501. Honda is a manufacturer and distributor of new motor vehicles under the Honda brand. Honda markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Honda-brand vehicles through a network of dealers throughout the United States from its headquarters in California. Honda also creates and distributes the warranties and other written materials that accompany the sale and lease of Honda-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

11.    Defendant Acura, ("Acura") is a division of American Honda Motor Co., Inc., with its corporate headquarters located in this district at 1919 Torrance Blvd., Torrance, CA 90501-2746 USA.

12.     Defendant Toyota Motor Sales, U.S.A., Inc., ("Toyota") is a California corporation, with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024. Toyota is a manufacturer and distributor of new motor vehicles under the Toyota brand. Toyota markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Toyota-brand vehicles through a network of dealers throughout the United States from its headquarters in Texas. Toyota also creates and distributes the warranties and other written materials that accompany the sale and lease of Toyota-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

13.     Defendant ZF-TRW Automotive Holdings Corp. ("ZF-TRW") is a Delaware corporation, with its corporate headquarters located at 12001 Tech Center Drive, Livonia, Michigan 48150. ZF TRW designs, manufactures, and sells automotive systems, modules, and components, including airbag systems, to automotive original equipment manufacturers. ZF-TRW markets, leases, warrants, and oversees regulatory compliance and warranty servicing of ZF-TRW products from its headquarters in Michigan. ZF-TRW also creates and distributes the warranties and other written materials that accompany the sale of ZF-TRW products throughout the United States, and makes decisions concerning warranty coverage when problems arise.

**B. Plaintiffs**

14.     Plaintiff Ryan Baldwin owns a 2014 Mitsubishi Lancer Evolution. The airbags in his vehicle have the ASIC Defect. The value of Baldwin's 2014 Mitsubishi Lancer Evolution has been diminished as a result of the ASIC Defect. If Baldwin had known about the ASIC Defect, he would not have purchased his 2014 Lancer Evolution or would have not paid as much as he did for it.

15.     Plaintiff Erin Reilly owns a 2013 Honda CR-V. The airbags in her vehicle have the ASIC Defect. The value of Reilly's 2013 Honda CR-V has been diminished as a

result of the ASIC Defect. If Reilly had known about the ASIC Defect, she would not have purchased her 2013 Honda CR-V or would have not paid as much as she did for it.

16.    Plaintiff Bilal Mohammad Ali owns a 2013 Kia Optima. The airbags in his vehicle have the ASIC Defect. The value of Ali's 2013 Kia Optima has been diminished as a result of the ASIC Defect. If Ali had known about the ASIC Defect, he would not have purchased his 2013 Kia Optima or would have not paid as much as he did for it.

17.    Plaintiff Jason Klein owns a 2017 Toyota Tacoma. The airbags in his vehicle have the ASIC Defect. The value of Klein's 2017 Toyota Tacoma has been diminished as a result of the ASIC Defect. If Klein had known about the ASIC Defect, he would not have purchased his 2017 Toyota Tacoma or would have not paid as much as he did for it.

18.    Plaintiff Joshua Kim owns a 2017 Hyundai Sonata. The airbags in his vehicle have the ASIC Defect. The value of Kim's 2017 Hyundai Sonata has been diminished as a result of the ASIC Defect. If Kim had known about the ASIC Defect, he would not have purchased his 2017 Hyundai Sonata or would have not paid as much as he did for it.

19.    Plaintiff Eric Ruiz owns a 2016 Fiat 500x. The airbags in his vehicle have the ASIC Defect. The value of Ruiz' 2016 Fiat 500x has been diminished as a result of the ASIC Defect. If Ruiz had known about the ASIC Defect, he would not have purchased his 2016 Fiat 500x or would have not paid as much as he did for it.

20.    Plaintiff Rex Weston owns a 2014 Acura RLX. The airbags in his vehicle have the ASIC Defect. The value of Weston's 2014 Acura RLX has been diminished as a result of the ASIC Defect. If Weston had known about the ASIC Defect, he would not have purchased his 2014 Acura RLX or would have not paid as much as he did for it.

## III.    JURISDICTION AND VENUE

21.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1961, 1962 and 1964, because Plaintiffs' Magnusson-Moss claims arise under federal law.

22.     Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Classes are citizens of states different from some of Defendant's home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Further, greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are citizens.

23.     In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims are derived from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

24.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.

25.     This Court also has personal jurisdiction over Defendants Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, Toyota and TRW under 18 U.S.C. § 1965(d) because each is found, has agents, or transacts business in this District.

26.     Venue lies within this District under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendants' contacts are sufficient to subject them to personal jurisdiction in this District, and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District.

## IV.     FACTUAL ALLEGATIONS

### A. The Defective Airbag Control Unit

27.     The airbag control unit ("ACU"), which contains the application-specific integrated circuit ("ASIC"), is the specific part at-issue in this matter. The ACU monitors signals from crash sensors on the vehicle. The ACU is in the vehicle's passenger compartment, and it connects to sensors in the front of the vehicle.

28.    The ACU is supposed to detect the collision and signal the vehicle's safety devices to spring into action in the milliseconds following a collision. The safety features which the ACU is supposed to engage may include airbag inflation, and the seatbelt pretensioner which should remove slack from the seatbelt, secure a vehicle passenger's body firmly into the seat, then milliseconds later, release the occupant to receive the maximum protective benefit the airbag can provide.

29.    If the ASIC fails, then the ACU may fail to engage the vehicle's safety features such as airbags and seatbelt pretensioners or may cause other vehicle safety features to fail. ACU malfunctions greatly increase the risk of serious injury and death to vehicle occupants in the event of a collision.

30.    The circuitry of the Class Vehicles' ASIC within the ACU may become overstressed from too many electrical signals during automobile crash. This electrical overstress ("EOS") causes the ASIC and the ACU to fail which results in the failure of the vehicle's safety features.

31.    The ZF-TRW Defendants designed, engineered and manufactured the ACUs defectively (design or manufacturing flaws). The defect causes failure of the airbags and other supplemental restraints in a crash. By designing, manufacturing, assembling, inspecting, distributing, or selling defective ACUs or Class Vehicles equipped with airbag systems containing the ACU Defect, Defendants rendered the Class Vehicles unsafe for their intended use and purpose.

**B. The Affected Cars**

32.    The vehicles manufactured by Defendants that contain the ACU Defect ("Class Vehicles") are:

| Make | Model | Years |
|------|-------|-------|
| Acura | RLX | 2014-2019 |
| Acura | RLX Hybrid | 2014-2019 |

| Acura | TL | 2012-2014 |
|---|---|---|
| Acura | TLX | 2015-2017 |
| Acura | TSX | 2012-2014 |
| Acura | TSX Sport | 2014 |
| Acura | TSX Sportwagon | 2012-2013 |
| Dodge | Nitro | 2010-2011 |
| Dodge | Ram 1500 | 2009 |
| Dodge | Ram 3500 | 2010 |
| Fiat | 500 | 2012-2019 |
| Jeep | Compass | 2015-2017 |
| Jeep | Liberty | 2010-2012 |
| Jeep | Patriot | 2015-2017 |
| Jeep | Wrangler | 2010-2018 |
| Honda | Accord | 2013-2015 |
| Honda | Accord Hybrid | 2014-2015 |
| Honda | Civic | 2012-2015 |
| Honda | Civic GX | 2012-2015 |
| Honda | Civic Hybrid | 2012-2015 |
| Honda | Civic SI | 2012-2015 |
| Honda | CR-V | 2012-2016 |
| Honda | Fit | 2012-2017 |
| Honda | Fit EV | 2013-2014 |
| Honda | Ridgeline | 2012-2014 |
| Hyundai | Sonata | 2013-2019 |
| Hyundai | Sonata Hybrid | 2013-2019 |
| Kia | Forte | 2010-2013 |
| Kia | Forte Koup | 2013 |
| Kia | Optima | 2013-2019 |
| Kia | Optima Hybrid | 2012-2016 |
| Kia | Sedona | 2014 |
| Mitsubishi | Lancer | 2013-2017 |
| Mitsubishi | Lancer Evolution | 2013-2015 |
| Mitsubishi | Lancer Ralliart | 2014-2015 |
| Mitsubishi | Lancer | 2013-2016 |
| Mitsubishi | Outlander | 2013 |
| Ram | 1500 | 2009-2012 |
| Ram | 2500 | 2010-2012 |
| Ram | 3500 | 2010-2012 |
| Ram | 4500 | 2011-2012 |
| Ram | 5500 | 2011-2012 |

| Toyota | Avalon | 2012-2018 |
| Toyota | Avalon Hybrid | 2013-2018 |
| Toyota | Corolla | 2011-2019 |
| Toyota | Corolla IM | 2017-2018 |
| Toyota | Corolla Matrix | 2011-2013 |
| Toyota | Sequoia | 2012-2017 |
| Toyota | Tacoma | 2012-2019 |
| Toyota | Tundra | 2012-2017 |

## C. Defendants Conceal the Defect

### i.   Defendants' Knowledge and Partial Recalls

33.   In 2016, FCA issued a ***partial recall*** of over 1.4 million vehicles, under NHTSA Campaign Number 16V-668. FCA was aware its vehicles were affected by the defective ACUs and these defective ACUs were resulting in injury and death on American roads. [Ex. 1, 2].

34.   On February 21, 2018, Hyundai and ZF-TRW finally conceded its awareness that the ZF-TRW ACUs within its vehicles were safety device failures resulting in injuries in automobile crashes which should have been prevented. Hyundai instituted a ***partial recall*** on February 27, 2018, and a still further partial recall on April 18, 2018, under NHTSA Campaign Number 18V-137. [Ex. 3, 4].

35.   Four months after Hyundai's initial recall, on June 1, 2018 Kia conceded its awareness of the defective ZF-TRW ACU components, and instituted its own ***partial recall*** in response to injuries in its vehicles which should have been prevented with properly functioning safety devices, under NHTSA Campaign Number 18V-363. [Ex. 5, 6].

36.   The recalled vehicles all contained ZF-TRW ASIC components in the ACU systems.

37.   As the NHTSA Safety Recall reports describe the defect, "if the ASIC becomes damaged, the front airbags and seatbelt pretensioners may not deploy in certain frontal crashes where deployment may be necessary, thereby increasing the risk of

injury." The reports further cite inadequate circuit protection as the cause of the defect. The investigations into the ACU system defects in these vehicles and the recalls they led to were sparked by four deaths and six injuries.

### ii.    The NHTSA Investigations

38.    On March 16, 2018 NHTSA opened its initial investigation into the ACU Defect. At that time, at least six injuries and four deaths resulted from the failure of vehicle features such as airbags and seatbelt pretensioners. [Ex. 7]. The initial investigation linked Kia and Hyundai vehicles to the defective ZF-TRW ACUs.

39.    On April 19, 2019, NHTSA upgraded its investigation of the ACU Defect to an Engineering Analysis, which entails "a more detailed and complete analysis of the character and scope of the alleged defect," than the initial investigation. [Ex. 8]. An Engineering Analysis, unlike the initial investigation, may recommend a safety recall.

40.    Internal NHTSA documents reveal that Defendants knew of the problems with the ASIC as early as August of 2011. [Ex. 9, 10, 11, 12]. Defendants could have taken steps to ensure the safety of the public in August of 2011, but instead chose to cover up the safety problems.

### iii.    Consumer Complaints

41.    While the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants were discussing the ACU defect with ZF-TRW, scores of consumers were lodging complaints about their vehicle airbags not deploying and seatbelt locks not working during major collisions, resulting in death and serious injury. The chart below lists complaints to NHTSA about the Class Vehicles which make clear that the Acura, Honda, Mitsubishi, and Toyota Defendants knew, or should have known, of the defects within their Class Vehicles.

## Acura

| Date | Vehicle | Complaint | NHTSA ID |
|------|---------|-----------|----------|
| 3/12/13 | 2012 Acura TSX | "Front end damage both sides damaged air bags did not come on **wife died**, dealer say bags ok but didnt know why they didnt come on. *TR" | 10502566 |
| 7/7/16 | 2016 Acura RLX | "I was involved in a moderate to severe frontal crash driving down a road and a left turning driver struck my car the knee airbag was the only airbag to deploy causing leg. Pain due to the air bag in the steering wheel not going off caused neck, back pain with headaches along with pain going into my legs. The car is showing two air bag codes car is a 2016 Acura RLX" | 10883170 |

## Honda

| Date | Vehicle | Complaint | NHTSA ID |
|------|---------|-----------|----------|
| 9/17/12 | 2012 Honda CR-V | "My wife who was driving our Honda CRV 2012 had an accident on the freeway off ramp. When the car in front of her ran over some wire that was left on the road, the driver made a sudden stop. My wife was unable to stop in time and hit the vehicle with our Honda. There was considerable damage on both cars.<br><br>Since the airbags did not deploy and the safety belt in our 2012 Honda CRV did not restrain my wife from hitting the steering wheel, she was seriously hurt.<br><br>I hope other owners of the Honda CRV 2012 do not have this type of situation happen to them. *tr" | 10479504 |
| 10/23/12 | 2012 Honda CR-V | "TL* The contact owns a 2012 Honda CR-V. The contact stated that while traveling 55 mph the vehicle collided with a deer and the drivers air bag and passenger side air | 10481537 |

| Date | Vehicle | Complaint | NHTSA ID |
|---|---|---|---|
| | | bags failed to deploy. No injuries were reported. The vehicle was towed to a repair shop. The vehicle was not repaired. The failure and current mileages was 1,500." | |
| 11/28/14 | 2012 Honda Civic | "TL* The contact owns a 2013 Honda Civic. The contact stated that while making a left turn, another vehicle drove through a red light and crashed into the front of the contacts vehicle. The air bag warning light illuminated and the air bags failed to deploy. A police report was filed. The contact sustained injuries to the chest, the back, abdomen and shoulder pains that required medical attention. The vehicle was not diagnosed or repaired. The manufacturer was notified of the failure. The approximate failure mileage was 10,000." | 10661200 |

**Mitsubishi**

| Date | Vehicle | Complaint | NHTSA ID |
|---|---|---|---|
| 9/14/14 | 2013 Mitsubishi Outlander | "My air bags did not deploy, the seat belt did not engage. Therefore I struck the steering wheel twice, and whipped my neck. *TR" | 10633083 |
| 3/21/15 | 2014 Mitsubishi Lancer Evolution | "My car was recently wrecked going around the corner in the snow is it slid off the road into a telephone pole and the fire hydrant the airbags did not go off when we impact we were doing about 40 miles per hour. The car also did not turn itself off like it should have. *TR" | 10700824 |
| 10/21/16 | 2015 Mitsubishi Lancer | "I was traveling along 20 miles below the speed limit had a deer jump out in front of me I swear to miss it my front passenger side tire went off the asphalt and into soft dirt and my car high centered on the raised lip of the road and slid down the hillside landing into trees both going forward and towards the right side of the car stopping | 10917870 |

| | | because of trees it destroyed the front end the entire undercarriage the entire passenger side of the car popped open the sunroof tried pushing the roof off the back driver side of the car and no airbags went off no safety features other than the seat belt worked." | |
|---|---|---|---|

**Toyota**

| Date | Vehicle | Complaint | NHTSA ID |
|---|---|---|---|
| 4/28/19 | 2012 Toyota Corolla | "My air bags did not deploy during an accident where a construction truck hit my car causing me to hit a tree and roll. ***My father died as a result of this accident.*** Now that a problem with the air bags not deploying in this type car I wonder if this is what happened.<br><br>Toyota did not inspect vehicle.<br><br>Lawyers Engineer said because of occupants bouncing around car couldn't tell where everyone was and therefore air bag deployment was not commanded. Consumer stated 'Don't believe Toyota was ever notified of incident. Cosumer stated air bag deployed when the fireman cut the roof off the car to get her parents, who were at the bottom of the car.<br><br>Crush Report [XXX], Case #[XXX]<br><br>Traffic Homicide Investigation Case #[XXX]<br><br>Information Redacted Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. 552(B)(6). *TT *DT *DT *JB | 11204250 |

| 1/17/13 | 2011 Toyota Corolla | "I was hit by a big rig traveling at approximately 20mph while stopped on the highway, the big rigs impact forced me into the back of an FL50XL, causing signifcant damage to the front and rear of the vehicle. The air bags did not deploy. *TR" | 10493277 |
|---------|------|------|------|
| 2/26/13 | 2011 Toyota Corolla | "While traveling on a highway, a vehicle struck the Toyota Corolla automobile on the front, passenger side. This collision caused the Corolla to then strike a median wall. After the second impact, the Corolla flipped at least two (2) times. The airbag never deployed. The entire front side was damaged in this accident. *TR" | 10500195 |

## D. Misrepresentations to the Public About Safety

42.    The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants omitted to inform or notify consumers, Plaintiffs, and Class Members of the ACU Defect, while at the same time Defendants marketed and represented that the Class Vehicles were safe and reliable. Plaintiffs were exposed to and consumed Defendants' advertisements and marketing materials prior to purchasing or leasing the Class Vehicles. The misleading statements and omissions about Class Vehicles' safety in the Defendants' advertising and marketing materials influenced Plaintiffs' decisions to purchase or lease Class Vehicles. Examples of the representations of safety to the public include:

a.    **Kia** – Defendant Kia advertised safety as their top priority with advanced airbags throughout the vehicle.



b.    **FCA** – Defendant FCA's advertisement of seven airbags surrounding the driver of the Fiat 500 would lead a consumer to believe the airbags will work.



c.   **Hyundai –** Defendant Hyundai boasts of safety awards received for their 10 new Hyundai models.



d.   **Mitsubishi –** Defendant Mitsubishi's advertisement of its "Top Safety Pick" award leads consumers to believe they are safe in this vehicle, and the vehicle is without a known defect.

The Insurance Institute for Highway Safety (IIHS) recently named this affordably priced and fun-to-drive vehicle an official IIHS "Top Safety Pick" for both the 2014 and 2015 models.

The Lancer joins the ranks of Mitsubishi's outstanding crossover/SUV offerings in the stylish 5-passenger Outlander Sport and the 7-passenger Outlander as Mitsubishi vehicles rated as a "Top Safety Pick" or higher.



e.   **Honda –** Defendant Honda advertised many safety features which include traction control, electronic stability and safe airbags to help keep families safe on the road.



Keep Your Family Safe on the Road

The 2018 Honda Accord Coupe comes with many modern safety features that help keep you and your family safe while you're out enjoying the open road. The latest traction control and electronic stability systems come standard along with front side airbags, dual stage multiple threshold airbags and side curtain airbags. There is also an optional safety system available, known as Honda Sensing, that includes even more valuable safety features, such as Lane Keeping Assist, that help steer the vehicle back into the lane if it drifts too far. This, along with many other features and options, sets the Honda Accord Coupe apart from the competition.

f.   **Acura –** Defendant Acura claims to have improved their safety features.



g.    **Toyota –** Toyota simply advertises, "Designed for safety."



### E. Diminished Value of the Cars

43.    Plaintiffs and members of the Class purchased or leased Class Vehicles unaware of the ACU defect within, and thus suffered other damages related to their purchase or lease of the Class Vehicles in the form of diminished market value, and loss of the benefit of their bargain as a direct result of Defendants' misrepresentations and omissions regarding the Class Vehicles' characteristics and the existence of the ACU Defect. The ACU Defect within the Class Vehicles diminishes the value and exposes drivers and passengers of the Class Vehicles to unreasonable safety risks.

## V.    CLASS ACTION ALLEGATIONS

### A. Class Definitions

44.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), on behalf of themselves, and a Nationwide Consumer Class defined as follows: All persons in the United States who purchased or leased a Class Vehicle.

45.    Excluded from each Class are Defendants ZF-TRW, Acura, FCA, Honda, Hyundai, Kia, Mitsubishi and Toyota, including their employees, officers, directors, legal representatives, heirs, and successors, wholly or partly owned subsidiaries or affiliates of

Defendants, Class Counsel and their employees, and the judicial officers, their immediate family members, and associated court staff assigned to this case.

**B. Class Certification Requirements**

46.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(1). There are millions of Class Vehicles nationwide. Individual joinder of all Class members is impracticable.

47.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(2). The questions of law and fact, described throughout this Complaint, are common to the class because they arise from the same course of conduct from Defendants. A sampling of the common claims include: 1) the Class Vehicles contain defective components, 2) that Defendants knew of defective components within the Class Vehicles; 3) Defendants failed to take any remedial action which resulted in damages to the Class members, 4) that Defendants failed to notify or warn Class members of the defective components, 5) that Defendants had a duty to warn Class members of the defective components; 6) that Defendants actively concealed and misled Class members as to the safety of the Class Vehicles, 7) that Defendants breached implied warranties, including the warranty of merchantability.

48.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(3). The claims of the representative parties are typical of the claims of the class.

49.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(4). The representative parties will fairly and adequately protect the interests of the class because they have retained counsel experienced in prosecuting consumer class action lawsuits with the financial resources to pursue these claims and the commitment to follow through with prosecution of these claims.

50.     Each of the Classes are ascertainable because their members can be readily identified using vehicle registration records, sales records, production records, and other

information kept by Defendants or third parties in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to the Class in compliance with Federal Rules of Civil Procedure 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Rule 23(d).

## VI.   EQUITABLE TOLLING

### A. Discovery Rule

51.    The causes of action alleged here did not accrue until Plaintiffs and proposed Class members discovered that the Class Vehicles had the defective ACUs.

52.    Plaintiffs could not have discovered with reasonable diligence that their Class Vehicle was defective within the time period of any applicable statute of limitations.

53.    Plaintiffs and proposed Class members had no realistic ability to discern that their vehicles were defective until after either the defective ACUs failed, or their vehicles were recalled. Even then, Defendants' active concealment of the true nature of the defect gave Plaintiffs and proposed Class members no reason to discover the causes of action.

### B. Fraudulent Concealment

54.    Defendants have known of the ASIC defect since at least August 2011, but have actively concealed from, or failed to notify, Plaintiffs, Class members, and the general public of the full and complete nature of the ASIC defect.

55.    Although in 2018 there was some limited disclosure of the relevant defects, the ACUs were defective for years prior to disclosure, and the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants did not fully investigate or disclose the seriousness of the issue.

56.    Instead, the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants concealed and downplayed the widespread prevalence of the problem. To this

day ZF-TRW has refused to acknowledge that their product is defective or to initiate a recall of its defective ACUs.

57.     Any applicable statute of limitations has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### C. Estoppel

58.     Defendants have an ongoing duty to disclose to Plaintiffs and proposed Class members the true character, quality, and nature of the Class Vehicles. They actively concealed the true character, quality, and nature of the vehicles, and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles. Plaintiffs and proposed Class members reasonably relied upon Defendants' knowing, and affirmative misrepresentations and/or active concealment of these facts. Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## VII.   CLAIMS FOR RELIEF

### A. Federal Claims

### COUNT I

### i.     Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

59.     Plaintiffs incorporate and reallege all preceding allegations as though fully set forth herein.

60.     On behalf of themselves and members of the Class, Plaintiffs allege this count against all Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants.

61.     28 U.S.C. § 1332 (a)-(d) gives this Court jurisdiction to decide claims brought under 15 U.S.C. § 2301.

62.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) based on all claims to be determined in this lawsuit.

63.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

64.     Plaintiffs and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

65.     The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants are each a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(4)-(5).

66.     Section 2310(d)(1) of the Magnuson-Moss Warranty Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

67.     Plaintiffs, including the Class, were provided with implied warranties of merchantability as defined by 15 U.S.C. § 2301(7). By this warranty, the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants warranted that the Class vehicles were fit for their ordinary purpose of safe passenger vehicles, and would conform in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

68.     15 U.S.C. § 2310(e) relieves Plaintiffs of the requirement to give the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants notice and an opportunity to cure, until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

69.     Furthermore, affording the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants knew, should have

known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure or afford the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

70.   Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.

71.   Because the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Defective Vehicles by retaining them.

72.   Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

73.   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members, in connection with the commencement and prosecution of this action.

74.   Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses, and costs they have incurred in attempting to rectify the ASIC defect in their vehicles. Such expenses and losses will continue as Plaintiffs and Class members must take time off from work, pay for rental cars or other transportation

arrangements, child care, and the myriad of expenses involved in going through the recall process.

75.    The right of Class members to recover these expenses as an equitable matter—to put them in the place they would have been but for the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' conduct—presents common questions of law.

76.    Plaintiffs request that the Court establish, administer, and supervise a program funded by the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants, under which the claims set forth in this count can be made and paid.

**B. California Statutory Claims**

<strong>COUNT II</strong>

    **i.**    **Violation of the Song-Beverly Consumer Warranty Act and Breach of the Implied Warranty of Merchantability**

77.    Plaintiffs incorporate and reallege all preceding allegations as though fully set forth herein.

78.    Plaintiffs bought or leased the Class Vehicles manufactured by the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants.

79.    Each Class Vehicle is a "consumer good" as defined by Cal. Civ. Code § 1791(a).

80.    Plaintiffs and members of the Class are "consumers" as defined by Cal. Civ. Code § 1791(b).

81.    The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants are each a "manufacturer" as defined by Cal. Civ. Code § 1791(j).

82.    At the time of purchase the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants were in the business of manufacturing consumer goods.

83.     At the time of transfer by sale or lease, the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants provided Plaintiffs and members of the Class with the implied warranty of merchantability as set forth in Cal. Civ. Code §§ 1791.1(a) and 1792.

84.     The Class Vehicles were not of the same quality as those generally acceptable in the trade, nor sanctioned by the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants.

85.     The Class Vehicles were not fit for the ordinary purposes for which the goods are used because they were equipped with defective ACUs, which among other things, may fail to deploy airbags and seat belt pretensioners in a crash event due to the ASICs being damages by EOS, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants, instead of protecting vehicle occupants from bodily injury during accidents.

86.     Because of the ASIC defect, the Class Vehicles are not safe to drive, and thus not fit for ordinary purposes.

87.     The Class Vehicles did not measure up to the promises or facts stated on the advertising because the advertising leads consumers to believe the vehicles are safe and uniformly fails to disclose the ASIC defect.

88.     The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles equipped with defective ACUs containing the ASIC defect which may result in failure of airbags and seat belt pretensioners to function as expected in a crash event due to the ASICs being damaged by EOS. The defective ACUs have deprived the Plaintiffs of the benefit of their bargain and have caused excessive depreciation in value of the Class Vehicles.

89.     Notice of breach is not required because Plaintiffs and the Class did not purchase their automobiles directly from the Acura, FCA, Honda, Hyundai, Kia,

Mitsubishi, and Toyota Defendants. Furthermore, on information and belief, the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants are already on notice by way of their knowledge of the issues, through customer complaints, numerous complaints filed against it and/or others, internal investigations, and individual letters and communications sent by consumers.

90.    As a direct and proximate result of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' breach of their duties under California Law, Plaintiffs and the Class received goods whose dangerous condition substantially impairs their value. Plaintiffs and the Class have been damaged by the diminished value, malfunctioning, and non-use of their Class Vehicles.

91.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and the Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles or the overpayment or diminution in value of their Class Vehicles.

92.    Under Cal. Civ. Code § 1794, Plaintiffs and the Class are entitled to costs and attorneys' fees.

93.    The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' breach of the implied warranty of merchantability was a substantial factor in causing Plaintiffs' harm.

## COUNT III

### ii.    Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

94.    Plaintiffs incorporate and reallege all preceding allegations as though fully set forth herein.

95.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi,

Toyota and ZF-TRW Defendants engaged in conduct that violated each of this statute's three prongs.

96.     The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants engaged in unlawful business acts or practices in violation of § 17200 by their violations of the Consumer Legal Remedies Act and Cal. Civ. Code § 1750 by the acts and practices set forth in this Complaint.

97.     The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, Toyota and ZF-TRW Defendants also violated the unlawful prong because they have engaged in violations of the Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act, 49 U.S.C. § 30101, *et seq*., and its accompanying regulations by failing to promptly notify vehicle owners, purchasers, dealers, and NHTSA of the defective Class Vehicles or the defective ACUs installed in them and failing to remedy the ASIC defect.

98.     49 C.F.R. § 573.6 (and Federal Motor Vehicle Safety Standard "FMVSS" 573) set forth a motor vehicle manufacturer's responsibility to notify the NHTSA of a motor vehicle defect within five days of determining that a defect in a vehicle has been determined to be safety-related.

99.     The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants violated the reporting requirements of FMVSS 573 by failing to report the ASIC defect or any of the other dangers or risks posed by the defective ACUs within five days of determining the defect existed, and by failing to recall all Class Vehicles.

100.    The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants violated the common-law claim of negligent failure to recall, because the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants knew or should have known that the Class Vehicles or the defective ACUs installed in them were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

101.    Defendants' active concealment of the dangers and risks posed by the Class Vehicles and/or the defective ACUs were material to Plaintiff and Class members.

Defendants misrepresented, concealed, and failed to disclose or remedy defects with the intention that consumers would rely on the misrepresentations, concealments and omissions.

102.   These acts were likely to mislead the public as to existing defects, and did in fact deceive Plaintiffs, about material information. Had they known the truth, Plaintiffs and Class members who purchased or leased the Class vehicles would not have purchased or leased them or would have paid significantly less for them.

103.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants also violated the unfairness prong of § 17200 by knowingly and intentionally concealing from Plaintiffs and the Class that the Class Vehicles suffer from a design defect while simultaneously obtaining money from Plaintiff and Class members.

104.   Defendants' failure to adequately investigate, disclose, and remedy, offend established public policy because the harm it causes to consumers greatly outweighs any benefits associated with those practices. The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' conduct has also impaired competition within the automotive vehicles market and has prevented the Plaintiffs and the Class from making fully informed decisions about whether to purchase or lease Class Vehicles with the defective ACUs installed in them or the price to  pay to purchase or lease them.

105.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants violated the fraudulent prong of § 17200 because of the misrepresentations and omissions they made in marketing the Class Vehicles as being equipped with standard safety features including airbags while failing to disclose that the ACUs have a potentially deadly defect. Defendants' active concealment of the dangers and risks posed by the Class Vehicles or the defective ACUs installed in them are likely to mislead the public.

106.   Plaintiffs and the Class have suffered injuries in fact, including the loss of money or property, because of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' unfair, unlawful, or deceptive practices. As set forth above, each

member of the Class, in purchasing or leasing Class Vehicles with the defective ACUs, relied on the misrepresentations or omissions of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants with respect of the safety and reliability of the vehicles. Had Plaintiffs and the Class known the truth, they would not have purchased or leased their vehicles, or not paid as much for them.

107.   All the wrongful conduct alleged herein occurred and continues to occur in the conduct of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' businesses. The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still ongoing.

108.   As a direct and proximate result of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

109.   Plaintiffs and the Class request that this Court enter such orders or judgments as may be necessary to enjoin the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants from continuing the unfair, unlawful, or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203; and for such other relief requested herein.

## COUNT IV

**iii.    Violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.**

110.   Plaintiffs incorporate and reallege all preceding allegations as though fully set forth herein.

111.   Plaintiffs bring this claim on behalf of themselves and the members of the Class under the laws of California against the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants pursuant to the Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code §1750, et seq.

112.   Plaintiffs and the Class are each a "consumer" within the meaning of Cal. Civ. Code § 1761(d).

113.   The Class Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

114.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

115.   The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

116.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants have engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1750, by representing that the Class Vehicles or the defective ACUs installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not.

117.   In the course of business, the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles or the defective ACUs installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

118.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants also engaged in unlawful trade practices by representing that the Class Vehicles or the defective ACUs installed in them have qualities which they do not have, representing that the vehicles are of higher quality than they actually are, advertising the Class Vehicles with the intent not to sell or lease them as advertised, and omitting material facts while describing them.

119.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants are liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CLRA.

120.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants have known of the ASIC defect in the defective ACUs since at least August of 2011, when the airbag non-deployment crashes were first attributed to damage of the ASIC by EOS. The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles or the defective ACUs installed in them.

121.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants engaged in unfair or deceptive business practices in violation of the CLRA by failing to disclose and actively concealing known defects involving the failure to deploy airbags and seat belt pretensioners in a crash event due to the ASICs being damaged by EOS.

122.   Defendants engaged in these acts in order to ensure that consumers would purchase the Class Vehicles.

123.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants knew or should have known that their conduct violated the CLRA.

124.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants made material statements about the safety and reliability of the Class Vehicles or the defective ACUs installed in them that were either false or misleading. such as representing the Class Vehicles to be "safe" and "reliable," despite their knowledge of the ASIC defect and failure to reasonably investigate.

125.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants concealed the dangers and risks posed by the Class Vehicles or the defective ACUs installed in them and their tragic consequences and allowed unsuspecting car purchasers to continue to buy or lease the Class Vehicles and to continue driving highly dangerous vehicles.

126.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants owed the Plaintiffs and the Class a duty to disclose the true safety and reliability risks of the Class Vehicles or the defective ACUs installed in them because the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the dangers and risks from Plaintiffs and the Class; or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Plaintiffs and the Class that contradicted these representations.

127.   The Class Vehicles or the defective ACUs installed in them pose an unreasonable risk of death or serious bodily injury to the Class, passengers, other motorists, pedestrians, and the public at large, because the defective ACUs are inherently defective and dangerous in that the defective ACUs will not deploy lifesaving safety measures of airbags and seatbelt pretensioners, which increases the risk of bodily injury during accidents to drivers and passengers.

128.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants have also failed to promptly notify vehicle owners, purchases, dealers, and NHTSA of the defective Class Vehicles or the defective ACUs installed in them and failed to remedy the ASIC defect. This is a further violation of the CLRA by way of violating the TREAD Act, 49 U.S.C. § 30101, and its accompanying regulations.

129.   The TREAD Act and its regulations requires manufacturers to disclose known vehicle defects related to motor vehicle safety. 49 U.S.C. § 30118(c)(1) & (2).

130.   The TREAD Act requires manufacturers to promptly notify vehicle owners, purchasers, and dealers of the defect and remedy the defect. 49 U.S.C. § 30118(b)(2)(A) and (B).

131.   The TREAD Act requires manufacturers to file a report with NHTSA within five working days of discovering "a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist." 49 C.F.R. § 573.6(a) and (b). At a minimum, the report to NHTSA must include: the manufacturer's name; the identification of the vehicles or equipment containing the defect, including the make, line, model year, and years of manufacturing; a description of the basis for determining the recall population; how those vehicles differ from similar vehicles that the manufacturer excluded from the recall; and a description of the defect. 49 C.F.R. § 276.6(b), (c)(1), (c)(2), & (c)(5).

132.   The manufacturer must also promptly inform NHTSA regarding: the total number of vehicles or equipment potentially containing the defect, the percentage of vehicles estimated to contain the defect, a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with its dates of receipt, and a description of the plan to remedy the defect. 49 C.F.R. § 276.6(b) and (c).

133.   The TREAD Act provides that any manufacturer who violates 49 U.S.C. § 30166 must pay a civil penalty to the U.S. Government. The current penalty "is $7,000 per violation per day," and the maximum penalty "for a related series of daily violations is $17,350,000." 49 C.F.R. § 578.6(c).

134.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants engaged in deceptive business practices prohibited by the CLRA and Cal. Civ. Code § 1750, by failing to disclose and by actively concealing dangers and risks posed by the defective ACUs, by selling vehicles while violating the TREAD Act.

135.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants knew that the Class Vehicles or the defective ACUs installed in them contained the ASIC defect that could cause a failure of deployment of airbags and seat belt pretensioners, but

the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants failed for many years to inform NHTSA of this defect.

136.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Class members, about the true safety and reliability of the Class Vehicles or the defective ACUs installed in them.

137.   The value of the Class Vehicles has greatly diminished due to the acts and omissions of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants. Now that the defects in the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' Class Vehicles are known, the Class Vehicles are now worth significantly less than they otherwise would be.

138.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' misrepresentations and failure to disclose material information caused the Class ascertainable loss. If Plaintiffs and Class members had been aware of the ASIC defect that existed in the Class Vehicles or the defective ACUs installed in them and the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' complete disregard for safety, the Class members either would have paid less for their vehicles or would not have purchased or leased them at all. Class members did not receive the benefit of their bargain as a result of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' misconduct.

139.   The Class risks irreparable injury because of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' acts and omissions in violation of the CLRA, and these violations present a continuing risk to the Class, as well as to the general public. The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' unlawful acts and practices complained of herein affect the public interest.

140.   The recalls and repairs instituted by some of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants have not been adequate. The recall is

not an effective remedy and is not offered for all Class Vehicles and other vehicles with defective ACUs susceptible to the malfunctions described herein. Moreover, The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' failure to comply with TREAD Act disclosure obligations continues to pose a grave risk to the Class.

141.   As a direct and proximate result of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' violations of the CLRA, the Class members have suffered injury-in-fact or actual damage. The Class currently own or lease or within the class period have owned or leased Class Vehicles with defective ACUs installed in them that are defective and inherently unsafe. The Class risk irreparable injury as a result of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' acts and omissions in violation of the CLRA, and these violations present a continuing risk to the Class, as well as to the general public.

**C. California Common Law Counts**

**COUNT IV**

**i.  Fraudulent Concealment**

142.   Plaintiffs incorporate and reallege all preceding allegations as though fully set forth herein.

143.   Plaintiffs allege this count on behalf of themselves individually, and the Class.

144.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants failed to disclose the defect in each of the Class vehicles but instead represented that the vehicles were equipped with airbags. Through advertisements, and other marketing materials, Defendants consistently represented that their vehicles were equipped with airbags.

145.   Any reasonable consumer would believe these representations to mean that the airbags were functional, not defective.

146.   Defendants concealed and suppressed the fact that the Class Vehicles had a defect in the ACUs since at least August of 2011, when the airbag non-deployment crashes were first attributed to damage of the ASIC by EOS. Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles or the defective ACUs installed in them. This was a material fact about which the Defendants had knowledge and that they concealed from Plaintiffs and Class members to mislead them.

147.   Plaintiffs and Class Members did not know this fact and could not have discovered it through reasonably diligent investigation.

148.   Defendants had a duty to disclose that the Defect existed in the AOC during an EOS or car collision because 1) the Defendants had exclusive knowledge of the defects; 2) the Defendants actively concealed the defects, including by not timely notifying NHTSA and consumers and by making partial representations about the existence of airbags that were misleading without the disclosure of the fact that the Class Vehicles contained defects which made the airbags fail during a collision—the very moment when airbags are needed.

149.   When Plaintiffs bought or leased their respective Class Vehicles they received no information from ZF-TRW, nor the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants regarding the defective and potentially dangerous ACU. The failure to disclose the defect was consistent and pervasive. In advertising and materials provided with each Class Vehicle the ACU defect was uniformly concealed from Plaintiffs and consumers.

150.   Defendants intentionally concealed, suppressed and failed to disclose the ACU defect in the Class Vehicles and the nature of risk that the airbags would not deploy in an accident. The full and complete nature of the defect was concealed from Plaintiffs, Class members, and the general public in order to protect their profits and to avoid recalls that would hurt each brand's image and cost the Acura, FCA, Honda, Hyundai, Kia,

Mitsubishi, and Toyota Defendants money. The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants as well as ZF-TRW concealed these facts at the expense of Plaintiffs and the Class.

151.   Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts.

152.   Had they been aware of the defective ACUs and the Defendants' disregard for safety, Plaintiffs and the Class either would not have paid as much for their Class Vehicles or would not have purchased or leased them at all.

153.   Plaintiffs did not receive the benefit of their bargain as a result of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' fraudulent conduct.

154.   Defendants' concealment and suppression of facts damaged Plaintiffs and the Class because the vehicles diminished in value as a result of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' concealment of, failure to timely disclose, and/or misrepresentations concerning the serious ASIC defect in millions of Class Vehicles and the serious safety and quality issues caused by the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' conduct.

155.   The value of all Class members' vehicles has diminished as a result of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' fraudulent conduct in connection with the defective ACUs and made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

156.   Accordingly, the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants are liable to the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain or overpayment for the Class Vehicles at the time of purchase, the diminished value of the defective ACUs and the Class Vehicles, and/or the costs incurred in storing, maintaining or otherwise disposing of the defective ACUs.

157.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being and with the aim of enriching the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants. The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V

### ii.   Unjust Enrichment

158.   Plaintiffs incorporate and reallege all preceding allegations as though fully set forth herein.

159.   Plaintiffs bring this claim against the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, Toyota and ZF-TRW Defendants on behalf of themselves and the members of the Class under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among various states' laws of unjust enrichment. In the alternative, Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class Members purchased their Class Vehicles.

160.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, Toyota and ZF-TRW Defendants have received and retained a benefit from the Plaintiffs and inequity has resulted.

161.   The Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, and Toyota Defendants benefitted through their unjust conduct, by selling Class Vehicles with a concealed safety-and-reliability related defect, at a profit, for more than these Class Vehicles were worth.

162.   The ZF-TRW Defendant benefitted through their unjust conduct, by selling components with a known safety-and-reliability related defect, at a profit, for more than the components were worth.

163.   Plaintiffs overpaid for these Class Vehicles and defective components within, or would not have purchased these Class Vehicles at all, and who have been forced to pay other costs.

164.   It is inequitable for the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, Toyota and ZF-TRW Defendants to retain these benefits.

165.   Plaintiffs do not have an adequate remedy at law.

166.   As a result of the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, Toyota and ZF-TRW Defendants' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

## VIII.  PRAYER FOR RELIEF

1.   Plaintiffs, for themselves and all others similarly situated, request the Court to enter judgment against the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, Toyota Defendants, and ZF-TRW as follows:

a.   An order certifying the proposed Class, designating Plaintiffs as the named representatives of the Class, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Rule 23 of the Federal Rules of Civil Procedure;

b.   A declaration that the ACUs in the Class Vehicles are defective;

c.   An order enjoining the Defendants from further deceptive, fraudulent, unlawful and unfair business practices, and such other injunctive relief that the Court deems just and proper;

d.      An award to Plaintiffs and Class Members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

e.      An award to Plaintiffs and Class Members for the return of the purchase prices of the Class Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages, and for reasonable attorney fees;

f.      A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket and loss-of-use expenses and damages claims associated with the Defective ACUs in Plaintiffs' and Class Members' Class Vehicles, can be made and paid, such that the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, Toyota Defendants and ZF-TRW, not the Class Members, absorb the losses and expenses fairly traceable to the recalls of the vehicles and correction of the Defective ACUs;

g.      A declaration that the Acura, FCA, Honda, Hyundai, Kia, Mitsubishi, Toyota Defendants and ZF-TRW must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles or make full restitution to Plaintiffs and Class Members;

h.      An award of attorneys' fees and costs, as allowed by law;

i.      An award of prejudgment and post judgment interest, as provided by law; and

j.      Such other relief as may be appropriate under the circumstances.

## IX.   DEMAND FOR JURY TRIAL

**MLG, APLC**

Dated:  July 15, 2019          By:   *Jonathan Michaels*
                                     Jonathan A. Michaels, Esq.

Jonathan A. Michaels, Esq. (SBN 180455)
(jmichaels@mlgaplc.com)
Kyle Gurwell, Esq. (SBN 289298)
(kgurwell@ mlgaplc.com)
Ryan Jones, Esq. (SBN 301138)
(rjones@ mlgaplc.com)
**MLG, APLC**
151 Kalmus Dr., Suite A-102
Costa Mesa, CA 92626
Telephone: (949) 581-6900
Facsimile: (949) 581-6908

Robert N. Kaplan, Esq. (SBN 1430800)
(rkaplan@kaplanfox.com)
**Kaplan Fox & Kilsheimer LLP**
850 3rd Ave. F. 14th
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

Laurence D. King (SBN 206423)
(lking@kaplanfox.com)
**Kaplan Fox & Kilsheimer LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707

Attorneys for Plaintiffs,
Ryan Baldwin, Erin Reilly,
Bilal Mohammad Ali, Jason Klein,
Joshua Kim, Eric Ruiz and Rex Weston